AMERICAN NATIONAL BANK & TRUST COMPANY OF CHICAGO *et al.*, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

(No. 53868; ■■■■■■■■■■■■■■

First District—December 2, 1971.

*Rehearing denied March 30, 1972.*

Raymond F. Simon, Corporation Counsel, of Chicago, (Marvin E. Aspen and Howard C. Goldman, of counsel,) for appellant.

Silverstein & Stein, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is an appeal from a declaratory judgment order declaring the existing zoning ordinance of the City of Chicago invalid as applied to the subject property and permitting the plaintiff to construct on that

property an apartment building of greater density than permitted by the existing ordinance.

We reverse and remand with directions to dismiss the complaint.

The relevant facts are as follows: Plaintiff, in its capacity as trustee of a land trust, sought from the Chicago City Council an amendment to the existing zoning ordinance of the City of Chicago changing the classification of the subject property from R-4 to R-6. This would permit the construction, on the property, of a 70-unit apartment building as described in the amendment and in the plaintiff's original complaint in the trial court. The amendment to an R-6 classification was denied by the City Council, and the plaintiff filed the aforementioned complaint in the Circuit Court seeking a declaratory judgment which was granted as described above. The plaintiff's original complaint contained the allegation that the plaintiff had exercised its administrative remedy by filing "Application No. 7530" for an amendment, which application was denied by the City Council. Application No. 7530 was the one previously mentioned which requested the change in classification of the subject property from R-4 to R-6. The defendant's answer neither admitted nor denied this allegation but demanded proof thereof.

On the day set for trial, without previous notice, the plaintiff sought to amend its complaint. The substance of the amendment was a change in the size of the proposed apartment building from 70 units to 37 units. To construct a building of such lesser size, the zoning classification of the subject property would only have to be amended from an R-4 to an R-5 classification. The plaintiff's amended complaint contained the very same allegation of exercising its administrative remedies as the original complaint, which allegation as we noted referred only to the plaintiff's unsuccessful attempt to gain a zoning classification of R-6 and not R-5. The defendant, at the time the plaintiff sought to amend its complaint, made an oral motion to strike the amended complaint on the grounds that the plaintiff had not exhausted its administrative remedies, as required, since it had never sought an amendment which would give the subject property an R-5 classification but only one to give it a classification of R-6. The trial judge ordered the trial to proceed subject to the right of the defendant to present applicable law in support of its motion. The defendant did not file an amended answer. At the close of oral testimony the trial judge heard the parties' arguments concerning the defendant's motion, and thereafter denied such motion. A declaratory judgment was then rendered in favor of the plaintiff.

In December of 1969, almost a year after the trial in this case, and while this appeal was pending, the plaintiff submitted to the Chicago City Council an application for a change in the zoning classification

of the subject property from R-4 to R-5. This application was denied. These facts were made a part of the brief filed by the plaintiff in this Court irregardless of the fact that they were not a part of the record in the trial court proceedings. The obvious reason that these events concerning the additional application were not of record was that they had not yet occurred at the time of trial. The defendant in its brief has responded to the plaintiff's inclusion of these matters. Although this Court may not normally consider matters de hors the record, we will, for purposes of clarity, take judicial notice of this belated application and the action of the City Council thereon. We are able to do this since the ordinances, decisions and rulings of the City Council are matters of public record, and as such this Court may take judicial notice thereof. *Nordine v. Illinois Power Company* (1965), 32 Ill.2d 421, 206 N.E.2d 709; Ill. Rev. Stat. 1967, ch. 51, par. 48b.

We will consider only that issue raised by the defendant which we deem determinative to our decision for reversal. That issue, as raised by the defendant, is that the plaintiff has failed to exhaust its administrative remedies in that it never sought an R-5 classification from the legislative authorities prior to seeking declaratory relief in the courts.

The plaintiff has responded to this issue by arguing that the defendant's failure to deny the plaintiff's allegation of exhaustion of remedies, as set out in plaintiff's amended complaint, in that the defendant did not file an amended answer, resulted in an admission thereof by the defendant. Further, plaintiff argues that there is no showing that it failed to ehauxst its administrative remedies and that in fact plaintiff did seek an R-5 classification which was denied. Thus to make plaintiff pursue this course would result in the performance of a useless act. This last argument has reference to the plaintiff's post-trial application to the City Council for an amendment to the ordinance.

The plaintiff's first argument is logically predictable. It is a general rule of pleading, as enunciated in our Civil Practice Act, that every allegation of a complaint, except allegations of damages, not explicitly denied is admitted unless the party state in his pleading that he has no knowledge thereof sufficient to form a belief. Ill. Rev. Stat. 1967, ch. 110, par. 40(2).

■■■ The application of this rule, however, must not allow blind adherence thereto to obscure the purpose this or other rules of pleading are designed to serve. The oft enunciated purpose of requiring specific pleadings is to determine and clarify issues for trial. *Neff v. Davenport Packing Co.* (Ill.App.Ct., 1971), 268 N.E.2d 574. Examining the facts of the instant case we find that the parties' original pleadings were in order and adequately delineated the various issues for trial. Then the

plaintiff amended its complaint. The substance of that amendment was to change the number of apartment units proposed from 70 to 37 as set out in three different paragraphs of its complaint. Can we now say this amendment was such as to obscure the issues given the failure of the defendant to amend its answer? We think not. Given these facts, noting especially that the plaintiff did not propose its amendment until the day set for trial, and further that the allegation in question was exactly the same in both the original and amended complaint, we think the trial court could have considered the defendant was standing on its answer to the first complaint. *Larson v. R. W. Borrowdale Co.* (1964), 53 Ill. App.2d 104, 203 N.E.2d 77.

■■ The plaintiff can draw no support from that line of cases holding that a party who files an amended complaint which does not adopt, refer to or incorporate anything from the prior pleading is in a position where his prior pleading is deemed superseded and abandoned and ceases to be part of the record. (*Precision Extrusions, Inc. v. Stewart* (1962), 36 Ill.App.2d 30, 183 N.E.2d 547.) In our case it is clear that the plaintiff adopted its prior pleading in the fullest sense, as the amended complaint is virtually a verbatim recitation of the original complaint.

■■ As a final response to the argument that the defendant has admitted the allegations of the plaintiff's pleading, we note that at the time the plaintiff proposed its amendment, the defendant made a motion to strike the amended complaint on the specific ground that the plaintiff had not, under the facts alleged in the amended complaint, exhausted its administrative remedies, since that complaint proposed a 37-unit apartment building which would require a different amended zoning classification than that for the originally proposed 70-unit building. To say now that the defendant has admitted the allegation which was the specific ground of objection in its motion would be the purest kind of formalism and would represent a retreat from the liberalized trend in pleading rules spawned by our Civil Practice Act.

■■ The plaintiff's next argument on this issue is that the defendant has not adequately shown a failure by the plaintiff to exhaust its administrative remedies. We do not agree. The defendant's brief establishes that when the foot space per dwelling unit requirements of the zoning ordinance are compared to the total area of the subject property, the plaintiff's originally proposed 70-unit building would require an amended zoning classification of R-6 to permit construction thereof. However, the 37-unit building proposed in the amended complaint would, under the ordinance, only require a classification of R-5. Since the plaintiff's allegation referring to its exhaustion of remedies cited the same application

for amendment, *i.e.* "Application No. 7530" which the record discloses was an application for an amendment of the classification of the subject property to R-6, the conclusion is logically compelled that in fact plaintiff did not, prior to trial, seek an amendment to an R-5 classification. See: Sections 7.5(6), 7.5—4, 7.5—5, 7.5—6, 11.9—1, 11.9—2 Chicago Zoning Ordinance, Municipal Code of Chicago 1968, ch. 194A, pars. 7.5(6), 7.5—4, 7.5—5, 7.5—6, 11.9—1, 11.9—2.

Finally, the plaintiff argues that since it made a post-trial application for an amendment to an R-5 classification for the subject property, which application was denied, it would be a useless act to pursue that course further, and the doctrine of exhaustion does not require the performance of useless acts.

■■ The leading case of *Bright v. City of Evanston* (1956), 10 Ill.2d 178, 139 N.E.2d 270, cited by both parties in the instant case, established that the reason for the rule requiring exhaustion of remedies is to give the municipal authorities an opportunity to correct invalid regulation before becoming involved in litigation. The cases cited by the plaintiff in support of its argument that requiring it to renew the quest for legislative relief would involve the doing of useless acts are distinguishable from the instant case. In each of the latter cases the appropriate legislative body was given an opportunity to administer, prior to any court litigation, the exact relief whether it be an amendment to or a variation from the ordinance which the plaintiffs later sought in the courts. The problem was that the request for relief was presented to the legislative body in incomplete or otherwise imperfect form. A brief examination of these cases will make this clear.

In *First National Bank of Skokie v. City of Chicago* (1962), 25 Ill.2d 366, 185 N.E.2d 181, the plaintiff had requested in the two preceeding years an amendment to the zoning ordinance to permit construction of several multiple family dwellings on its property. The amendment was necessary because the dwellings would exceed the area per dwelling unit requirements of the ordinance. Both requests were denied, and the plaintiff constructed conforming single family dwellings on all but one large lot, and for this it sought and received a declaratory judgment allowing construction of a non-conforming multiple family dwelling. The city argued unsuccessfully that plaintiff had to again seek an amendment for the one remaining lot. This request would be for the very same amendment as it had twice previously made except it would cover only one dwelling rather than several dwellings. This is unlike the case at bar in which an entirely different amendment was sought in court as opposed to that sought before the City Council.

In *Kupsik v. City of Chicago* (1962), 25 Ill.2d 595, 185 N.E.2d 858, the issue was the right of plaintiff to get an injunction against enforcement of the zoning ordinance, and the issue of exhaustion of remedies was not even raised.

In *High Meadows Park, Inc. v. City of Aurora* (1969), 112 Ill.App.2d 220, 250 N.E.2d 517, the plaintiffs were not held for failure to exhaust these administrative remedies when their original application sought a building permit for only the first phase of their mobile home park project, and the city argued that the plaintiffs had to apply for permits for the remaining phases of their plan before seeking court relief. The court noted that the original permit made sufficient reference to the total plan to apprise the city of the intended result, and further, the city's denial of that permit was based in part on the grounds that the plaintiff's total plan was violative of the city's zoning ordinance.

In *Herman v. Village of Hillside* (1959), 15 Ill.2d 396, 155 N.E.2d 47, the plaintiff, before getting a declaratory judgment, had requested an amendment to the zoning ordinance enabling him to continue his quarrying operations. This amendment was denied. The Village argued the plaintiff should have sought a variation on the same grounds as the amendment before going to court. Since the same board of appeals which denied the amendment would have jurisdiction over any variation request, the Supreme Court thought the plaintiff had sufficiently exhausted his administrative remedies.

Finally, in *Weircioch v. Village of Niles* (1963), 27 Ill.2d 363, 189 N.E.2d 278, the plaintiff owned a lot in an area zoned as residential. The shape of the lot coupled with the area requirements for residence buildings as set out by the ordinance made building a residence highly impractical. The plaintiff sought a variation permitting construction of a filling station. The variation was denied, and the plaintiff then sought and received a declaratory judgment. The Village argued that plaintiff failed to exhaust her remedies in that she should have sought variations from the ordinance area requirements which still would have permitted her to construct a residence. The Court rejected that argument saying that plaintiff desired a gas station, and since she sought and was denied a variation on that basis, she had sufficiently exhausted her remedies.

■■ In the instant case the relief requested from the court below was different from that sought from the City Council prior to trial. We must emphasize that we do not think this is a semantic difference. A look at the previously cited section of the Chicago Zoning Ordinance indicates the substantially different area per dwelling unit requirements for an R-6 classification as opposed to an R-5 classification. It can not be sum-

marily concluded that because the City Council denied the plaintiff an R-6 classification prior to trial they would have acted similarly had the plaintiff requested the R-5 classification.

■■ Lastly, we note that the plaintiff's subsequent application for an R-5 classification is of no avail. To allow such belated action to qualify as fulfillment of the exhaustion requirement would be first to engage in the impermissible assumption that because the counril denied the plaintiff an R-5 classification almost one year after the trial, it would have done the same thing had the application been timely made, and second, would render the exhaustion doctrine itself meaningless.

Reversed and remanded with directions to dismiss the complaint.

McNAMARA, P. J., and DEMPSEY, J., concur.